Bradbury, J.
There is no dispute in this case over the facts. It is clear that the relator’s property stands on the books of the county auditor at a valuation $2,000 greater than it should stand. The contention relates first to the power of the. county auditor to correct his duplicate, for the current year and second as to his duty to call the matter to the attention of the county commissioners, *41 so that the latter body may have before them the question of refunding to the relator the taxes paid by her during the five preceding years on this erroneous valuation of her property. The authority of the auditor to make the correction, and his duty to lay the matter before the board of county commissioners, rests upon the following provisions of section 1038, Revised Statutes:
‘ ‘ The auditor shall, from time to time, correct all errors which he discovers in the tax list and duplicate, either in the name of the person charged with taxes or assessments, the description of the lands or other property, or when property exempt from taxation has been charged with tax, or in the amount of such taxes or assessments,” * * * 1 ‘ and if at any time the auditor discovers that any erroneous taxes or assessments have been charged and collected in previous years, he shall call the attention of the county commissioners thereto, at any regular or special session of the board, and if the commissioners find that' taxes or assessments have been so erroneously charged and collected, they shall order the auditor to draw his warrant on the county treasurer, in favor of the person or persons paying the same, for the full amount of taxes or assessments so erroneously charged and collected, and the county treasurer shall pay the same out of any surplus or unexpended funds in the county treasury; * * *”
A brief history of the transaction discloses that the relator obtained her title to the real estate in question in September, 1889, and soon thereafter began the erection of a dwelling house thereon which was completed about the first day of June following, (1890). In March, 1890, that being the year of the decennial appraisement of real estate *42 in Ohio, the decennial appraiser for the district in which the property was situated, entered upon his duties.
Later on the annual appraiser for 1890-entered upon his duties. It is part of this latter officer’s duties under section 2753, Revised Statutes, to “return a list of all new buildings, ” etc. * * * ‘ ‘the value of which shall not have been previously added to” * * * “the valuation of the land on which such structures have been erected.” * * * And in discharging his duty in this regard he returned the building in course of erection on the relator’s lot as an unfinished structure, fixing- its tax value at $1,500, and this sum was added to the previous value of the land ($800), making a total of $2,300, upon which she paid taxes for that year. The decennial appraiser, although he entered on the discharge of his duties earlier, did not finish them and make his return until December, 1890, and then returned thevalueof the building at $2,800, or $1,300 more than the annual assessor had valued it. The next year (1891), the annual assessor made the following return as to this property: Total valuation of structuré, $3,500; partial value reported last year, $1,500; amount to be added * * '* for new structure, $2,000.
The form of this return discloses that the annual appraiser for 1891 in appraising the relator’s property entirely ignored the appraisement made the preceding year by the decennial appraiser, whereas he should have taken it as the basis for his appraisement and return. For it is quite clear that the decennial appraisement of 1890 fixed the value of the property, which could not be increased by the annual appraiser for the year following unless a new building or structure had in the meantime *43 been placed on it. When the county auditor came to make up his tax list he took the return of the •decennial appraiser for 1890 as his basis, and ignored that of the annual appraiser for 1890. The result was that he added the $2,000 returned by the annual appraiser for 1891 to the value of the decennial appraisement for 1890, thus increasing by $2,000 the valuation of relator’s property over that fixed by the decennial appraiser. On this increased valuation she has paid taxes ever since. Now, it is manifest that this action by the auditor was erroneous, that is, he unwarrantably added $2,000 to the value of relator’s property, unless a building or structure of that value had been placed thereon after it had been appraised by the decennial appraiser in 1890, and before the appraisal by the annual appraiser in 1891. That this was not done is a conceded fact. It is, therefore, clear that $2,000 was in the year 1891, erroneously added to the value of relator’s property and still remains and that ever since it was thus added, she has paid taxes thereon. This was not a fundamental error in any sense of that term. The addition was not made by reason of any mistaken notion that the relator was legally chargeable with the additional $2,000. It was the result of inadvertence on the part of some one of the public officers, charged with a duty in respect of bringing property on the tax list of the county for taxation. The relator is in no wise chargeable with the error, and the plainest principles of justice plead in her behalf.
Council for the auditor, however, without denying either the fact that the relator’s property was thus over-valued, or the manner in which it was •done, contend that it was not the duty of the auditor, under section 1038, Revised Statutes, to *44 correct the error, because all the facts necessary to enable him to make the correction do not appear in the records of his office. It is true that some of the facts necessary in this ca.se to show the error must be ascertained from other sources. This objection, however, we do not regard as conclusive. If all the data necessary to correct the error appear on the records of the auditor’s office, the duty of correction may of course be readily and unhesitatingly discharged, whereas, if some of the facts must be gathered from other sources the auditor might be warranted in proceeding with caution and to require convincing proof of the facts on which the alleged error may be based. The statute itself does not require the correction to be founded on facts of record in the auditor’s office; and as its provision, in as far as they authorize relief against unjust taxation, may be regarded as remedial in their nature, we perceive no sufficient reason for restricting their operation in such cases by a construction that would deny relief except on record evidence. It has alwaj^s been held in making additions to the tax list that a county auditor may. act upon information obtained from other sources, and we see no sufficient reason why upon the facts thus obtained he may not just as well afford relief ag’ainst unjust taxation; nor can we find anything to militate against this conclusion in the cases of Ohio ex rel. v. Commissioners, 31 Ohio St., 271; Ins. Co. v. Cappellar, 38 Ohio St., 560; or State ex rel. v. Raine, 47 Ohio St., 447.

Judgment. affirmed.